Good morning, Your Honors. Amy Kimball, Federal Defenders, on behalf of Mr. Hernandez. Mr. Hernandez mistakenly believed that the lawful permanent resident card his wife gave to him the day of his arrest was newly issued and valid, that he had gotten his residency back, and that he could return to the United States legally. Why don't you try to slow down on your speech? Okay. That's the way the younger generation speaks, and everything's fast, and email, and all the other stuff. I'll slow down, Your Honor. Because of that mistake, Mr. Hernandez lacked the conscious desire to reenter the United States asking consent, an element for which the government bears the burden of proof in an attempted reentry case. Well, he had – I take it what this case really was, was Mr. Hernandez wanted to present a mistake-of-fact defense. That's correct, Your Honor. He wanted to say, I was – I mistakenly assumed that this card issued in 2006 had just, you know, had just been issued and absolved all my prior – I don't mean it in the greater sense – absolved all the prior sins, and therefore I could reenter. That was the defense he wanted to – That was the defense. Now, here's – I want to – I'm having some difficulty with the record in this case, so I want to ask you. As I read the motions in limine, the judge deals with them over a two-day hearing. And the judge initially says, sure, you want to put on this defense, you can take the stand and put on this defense. And there's a lot of fight about what his wife and son can say. And the judge says, I won't let them say what they believe the card to be, but I'll let you say what you believe the card to be. And then on day two, the judge says, no, this is such a stupid defense. I'm not going to let you put it on at all. It's not – it wouldn't be a reasonable belief. And then on the second day of trial, the judge says, I've been thinking about this. If you want to take the stand and put on this defense, go ahead. And Mr. Hernandez does take the stand. He puts – he testifies to his mistaken belief. His wife and son are allowed to testify about the events. The card arrived at the house. We brought it down to the father. They were even allowed to say what they told them, you know, permissio, your card has arrived. And so that's what occurs at trial. You're contending on appeal, and you contended in your new trial motion that the judge unconstitutionally imposed a condition on your client, which is to say he could only put on the defense by taking the stand. My difficulty is as I read the record, I don't find any point until the new trial motion in which you said, Judge, you got it wrong. We want to put on the defense solely by the husband – by the wife and the son. Indeed, when I read the record and the judge said, I've reconsidered, you can put him on the stand, basically the reaction is, hey, that's great, Your Honor. We're going to proceed with our case. Aren't you now arguing something to us that you never argued to the trial judge? Your Honor, to take your question, I think you're right that the record is confusing. Okay, but as confusing as it is, where did you ever say to the trial judge, Judge, this is an unconstitutional condition. As I read the record, what you keep saying is we want to put him on. The only way we can make this defense is to put him on. At one point when he says, you know, I'm not going to let him say X on the second day. I'm not going to let him say something unless it occurred after 2006. You say, but that will kill our ability to put him on the stand. We want to put him on the stand. Given all that, how can you now complain that the judge said you can put him on the stand? Well, Your Honor, we've made several arguments. One is that the district court excluded evidence even when he allowed us to present it. Right, and those are separate arguments, and you can take them off separately. Those are separate arguments. I think that the ruling – I think it was clear throughout our eliminated hearings that we were trying to put on evidence of this defense through other witnesses, including the government witnesses. During the initial ruling that precluded the entire defense, we were not even allowed to elicit or refer to the card. That was the second ruling, if you will. Yes. So at some point he said that we weren't even allowed to elicit that this was a lawful permanent resident card. And then he changed his mind. He said that we weren't even allowed to elicit that this was a lawful permanent resident card. And then he changed his mind again and allowed us to present some evidence of the defense conditioned on Mr. Hernandez testifying. But at least at some point in the trial, shouldn't you have said to the judge that's a bad condition? We want to put on the defense solely through the son and the wife. It would have been a terrible strategic decision because I don't think a jury would ever have accepted it in the absence of his testimony. But, you know, you never told the trial judge that. He never had an opportunity to say if that's your contention, here's what I'm going to do. We did not raise in his final ruling this particular objection, the unconstitutional conditions argument. But we had raised earlier when he precluded the entire defense that that contravened his right under the Constitution. Right. But that was the ability to put on the entire defense without regard to how you wanted to put it on. Correct. Okay. And we had discussed two different hypotheticals. When he was discussing the statements admissible through the wife and through the son, he had discussed two hypotheticals and in one of them had talked about if Mr. Hernandez testifies, in another if not. And we had clarified that even if Mr. Hernandez testified, the evidence, the non-hearsay statements for effect on listener from the wife and from the son about what he was told about the card would be precluded. But didn't they actually at trial get to testify about what they told him? They were not allowed to testify exactly what they told him. There was – I was trial counsel on this case and I specifically instructed them not to say anything about them saying that they believe the card was valid. But when I read the record, they did say some stuff, didn't they? They – It's contrary to your instructions. Well, I believe that the wife said that she gave him the card and that it said on its face that it was not expired. But she didn't say anything about her opinion as to its belief and what she had told him. What – I believe the quote that Your Honor is referring to, the me permiso, is one of the things that he said when he first saw the card. Okay. That she testified to and then quickly – I believe there's a government objection and then we sort of quickly went back to what his emotional reaction was. I don't want to dominate, but I'm still focused on this question. So let's assume that you're wrong about the unconstitutional condition argument. Didn't the judge fairly allow you to present this defense? What is it that he excluded that made the trial unfair? Our contention is that because of a misapplication of the hearsay rules and 403 analysis, that he didn't allow us to elicit from the wife exactly what she told her husband about the card, that she believed it was valid. That was crucial to his formation of the belief that it was valid, and it's also the basis by which he inferred that she had applied for the card, something he testified to, but he wasn't able to explain how he came to that conclusion because of the judge's ruling not allowing these statements to come in for their effects. Of course, if she had been able to say that, then I assume telling the truth she would have then been cross-examined and said, no, I didn't apply for the card. Right. That's correct. But the issue is if she told her husband that the card was valid, he had no reason to disbelieve her or think that she was trying to hoodwink him. And so when he received that news, he was elated. He thought that she had applied. He assumed that she had applied for the card. And so I think, you know, especially because the government was allowed to introduce statements for their effect on Mr. Hernandez, they were allowed to admit the immigration warnings from both deportations, and the AFILE custodian was allowed to testify about what he had been told, even though she had not been there when any of these warnings would have been read. In fact, the witness who ostensibly, according to the paperwork, read those warnings was not a witness at trial. And so the government was allowed to present evidence about what he was told about his immigration status through these documents and through the testimony of the AFILE custodian. And the government argued in closing that he was told time and time again that he couldn't come back to the United States. And so I think that presented a very lopsided view of the evidence because they were allowed to admit statements under the TRSA exception, but he was not. Second type of evidence that wasn't allowed were his statements when he received the card and when he was told about the card of his then-existing mental condition. Your Honor has highlighted the one part. He did get to say... He was allowed to say... It's me permiso. The wife said, me permiso, which I don't believe was even fully translated, so I'm not sure how much the... I don't understand. But it wasn't the whole set of statements because of what the courts in Lemonade ruling had been. And I think in a case like this where the sole issue that was contested by the defense was Mr. Hernandez's state of mind the time he entered, that evidence of what he said when he saw the card, that he believed it was valid, that he was planning on returning to the United States legally, which would be admissible under the Hillman Doctrine and under 8033, I think those statements are reliable. That's part of the reason there is a hearsay exception under 8033 for statements of then-existing mental condition because the testimony of someone at trial when they're already accused of a crime is likely to be viewed by the jury with suspicion because the defendant, when he's testifying in a criminal trial, is obviously biased in the outcome. But his statements that he made to his wife, to his son, that could have been admitted through all three defense witnesses, of what he said before there was that motive to fabricate, I think were crucial corroborative evidence of what his state of mind was at the time he entered. And because they were not allowed to be admitted, the jury again had a lopsided view of the evidence. And I think that one of the cases that the government cited to, United States v. Boulware, is a case where, through misapplication of the hearsay rules, a judgment, it was a tax evasion case and a judgment affecting property wasn't allowed to be admitted. Though the defendant in that case testified, and he testified that there had been a civil judgment that supported his defense, the Ninth Circuit found that there was reversible error, that the failure to admit that one piece of hearsay evidence, even though there was other evidence through the defendant himself to the same effect, violated his right to present a defense and was reversible error. If the judge did a 403 analysis here, what's our standard of review? I think that under Hinkson, because the judge was applying the wrong legal standard for relevancy in this case, that it has, that there is an abuse of discretion, and that under Hinkson there has to be reversal. Because the district court seemed to think that it had to be an objectively reasonable mistake of fact rather than a subjectively reasonable mistake of fact. And moreover, because in the district court's rulings about the statements of the wife, he seemed to think that they were, more than he seemed to think, he said that they were not relevant because she lacked immigration expertise. And that if she lacked immigration expertise, that they were not probative of anything. I think his words were, who cares? And so we tried to say over and over again that the issue was not whether in fact she had this expertise, but whether Mr. Hernandez relied on her statements in the formation of his belief that the card was valid, the issue, at issue in the case. But, by the way, can I return to where you started in this one? This is an affirmative defense on which you bore the burden of proof, right? No, Your Honor. This is not really an affirmative defense. You're trying to negate. Negate the government's burden to show intent. So you're trying to create reasonable doubt on intent. Exactly. And under Sandoval-Gonzalez, there's no burden of production for the defendant when we're just trying to show. But you're not contesting that in the absence of this defense, the government had sufficient evidence to go to the jury. In other words, if you hadn't put on this defense, the government, the jury would have been allowed to infer knowledge from the entry. Yes, Your Honor. Okay. So I thought that you were arguing that there was an unconstitutional condition imposed. I did. I believe Judge Hurwitz asked, assuming we don't agree with that condition, then what other arguments do you have? I'm happy to discuss the unconstitutional condition arguments. I don't think I raised that at the time that the judge made that initial ruling is what I can say. So we would review that argument for plain error? I believe that's correct. So I didn't raise that issue at that time. I did raise it in the post-trial motion. Right. But at the time of that ruling, which was in between the two parts of my opening statement, I did not raise an objection to that ruling. So how was your client, assuming we're reviewing this under plain error, how was your client prejudiced by taking the stand? I think there were a number of reasons that Mr. Hernandez may not have chosen to take the stand, especially if we had been able to present the whole defense with the statements from the wife and the statements of then-existing mental condition of Mr. Hernandez when he received the trial. So do you want a new trial where he doesn't take the stand? That would be fabulous. But, I mean, see, if you want a new trial where he takes the stand, you already had one. I mean, putting the evidentiary objections aside. I mean. And you want a new trial if he doesn't take the stand. I can't imagine you'll win on this defense if you don't win on your evidentiary objections. Well, Your Honor, I think the other reasons that he were prejudiced are twofold. One, I think that there were reasons that he would have reservations about taking the stand because, as was submitted in the sentencing documents, he has a very low IQ, sort of limited fluency, limited education. And then the other reason is because, you know, the government was able to cross-examine him more fully about the 404B and 609 evidence. We've also raised as an issue before this Court the 404B rulings. And I know that it's not uncommon if someone has a prior illegal entry conviction that it comes in. Correct. But the only basis that the government proffered was knowledge. The district court initially said that that wasn't an issue, what his knowledge was in 2008, and rejected that as a rationale. Then when the government later made what we would argue are propensity-based arguments during the Illuminate hearings, the district court accepted the 404B evidence, and in his accepting of that, he said, I guess like so many other cases, dot, dot, dot, where people attempt to come into the United States over and over again, it certainly is sufficient to support a finding that he once again attempted to enter the United States without permission. And I think, again, under the 403, so I think it was accepted and argued as propensity. So even if there are other bases under which it could have been admitted, again under Hinkson, it's just... But with the jury was instructed that they could consider it only with respect to knowledge, right? The limiting instruction was given. There was a standard limiting instruction, but in the government's closing, they made propensity-based arguments. I believe they said, if you don't succeed, they said, why is this important? If you don't succeed at first, try, try again. The defense raised an objection, and the district court overruled. So I think that whatever limiting instruction was given was undercut by the fact that the defense made this objection and that the district court overruled it, sort of confirming that the government's argument about propensity was a valid argument to be making about this particular evidence. So I think I understand that oftentimes 404B of this type would be admitted, but I think because of the way it was admitted in this case and because of the way it was argued, it is reversible error. I also think that the 403 analysis, the district court engaged in, I am out of time. Finish your comment. Okay. Sorry. I was supposed to look at the lights. I have a couple of questions for you. But the 403 analysis, I think under Hodges, this was only marginally probative, and the danger of unfair prejudice was very great because this evidence allowed the government, as soon as the first government witness to start arguing and portraying Mr. Hernandez as a recidivist immigration violator and to prejudice the jury against him, and the fact that the immigration felony was elicited through the primary officer as the reason for the referral to secondary inspection. So it was very soon in the government's case. Your Honor. Well, what you're just telling us, that once it comes out that he's made, at an earlier time, illegal entries, that really ends the case. I think that especially being able to elicit through, I believe it's Officer Lopez, the exact facts underlying it and the false claim of United States citizenship, which would not have been admitted under 609, that there was this danger of unfair prejudice and that I think, again, the evidentiary rulings of the district court in total presented a lopsided view of the evidence and must be reversed. Now, say you went back and you had a new trial, and the government has the burden of proving the specific intent beyond a reasonable doubt, and you get into evidence in your client's defense, this green card, when you read it, it can be read and certainly give a strong impression that it's good until, what was it, 2016? 2016. And he doesn't testify, doesn't take the stand. Would that be how you would present the case? Exactly what my trial strategy would be upon remand, I can't say for sure. But that was how the defendant proceeded in Contreras-Murillo. In that case, they just presented the fact of the lawful permanent resident card and the fact that there was no nervousness presented by the defendant at primary inspection. In this case, there's additional corroborative evidence that comes from witnesses other than Mr. Hernandez himself through the wife and through the son. You did get the card into evidence in this case? Yes, we were able to get the card into evidence. And he presented the card at the border, right? It was actually his wife who handed it over because she was the driver in the car, but yes. She was the driver, yeah. Yes. And see, I have a lot of faith in these government cards because I have an ID card that states my date of birth and then right below it, it states the date I expire. And that is until 2024. So I'm relying on that. I can see why he would rely on that. I hope you're right, Your Honor. You're relying on that. I'm relying on it. Oh, it just seems to me, too, the way this all came out, the judges not allowing it and allowing it and putting conditions on it. That kind of prejudices him as well. It was difficult to develop a trial strategy. Well, I think you ultimately made the judge nervous about excluding a defense. With the motion to reconsider, yes. He got a little nervous and was afraid that if he excluded the defense, that he would get reversed. Better to let it come in, see where it goes, because the government had a strong case. I believe that's what he was talking about. And then he put some limitations on what the witnesses could testify to. Yeah, I believe that's correct. And I believe, you know, from his statements at the eliminating hearing, he was rather hostile to this defense throughout. Well, I mean, it's a few from afar you could understand why a judge might find the defense hard to believe. I'm very close to the case. As you argue to him, by excluding the defense and all the witnesses in effect, he was judging their credibility. He said that he was not putting much stock in what they had to say. And you argued to him that that was a role for the jury. I mean, he just basically got nervous. He just figured, I might as well let it in. And then he put some limitations. And we'd argue those limitations gutted our ability to present a full defense. But those are the limitations on the testimony of the wife and son. Well, they also were limitations on what Mr. Hernandez himself was allowed to testify. He wasn't allowed to testify to what his wife told him or what he said at the time. I mean, he was allowed to testify what he thought at the time. But I think the matching evidence, both the wife saying this is what I said and him saying this is what my wife told me, the wife saying this is what he said and him saying this is what I said, I think that that would corroborate what the state of mind of Mr. Hernandez has been in a fairly compelling way. Thank you. Afternoon, Your Honors. So as Your Honors set forth, I think this case is, the defendant's issue is that he wasn't allowed to present a defense. But I think the record makes clear that all of this came in. The defendant testified. His wife testified. His mother testified. He was allowed to argue in closing that he had made a mistake, that he did not have the conscious desire to enter the United States. The only question was the limitation upon him by requiring him to first testify before he could present his defense. And I think, Your Honors, that was, again, the record makes clear this is a compromise issue. I mean, the district court is struggling with the fact that there's no objectively under Smith-Baltier doesn't believe there's an objectively reasonable position for the defendant. He hadn't made any effort since his last deportation. He hadn't contacted the government. He hadn't applied for permission to reenter. So do you agree with your opposing counsel that we review the judge's requirement that the defense be put on, can only be put on if the defendant took the stand for plain error? I agree. I agree, Your Honor. I think it's. Why isn't it plain error? It's because it's, she didn't object to it at the time. I mean, she. No, no, that's not the test for plain error. That's why we do plain error. That's why we do plain error. Why wasn't it? The loss, I'm uncertain. I mean. Well, so I think under Smith-Baltier, whether or not you believe you have the right to reenter is based on a good faith objective belief. In this case, and the only way to reenter as a deported alien is to apply for permission to reenter. Well, but what if the wife had been allowed to testify that I got this card, God knows how it appeared at their house four years after it was issued, but put that aside for a second. That's a jury credibility question. I got this card. My prayers had been answered. I took it to my husband, and I said to him, you have received permission to reenter the country. Here's your card. Would that be enough to take the defense to the jury? I don't think so, Your Honor. Because I think under the law as it is, it's the defendant who had to apply for permission to reenter. I mean. Well, we all understand the argument. We're talking about a state of mind. You're saying he couldn't have had that state of mind because he had never applied, but that means the defense shouldn't have been presented at all. That's correct. I think it was incorrect to allow him to enter anyway. I think it was, I think that. Let me ask you this. How was it that this card was sent to his home? So it's unclear. They're renewing it. So who made the initial mistake? I think he did. I think, so he applies. No, no, the government made it. Well. By sending the card out. It was issued before he was first deported. Exactly. It was issued in 2006 before he had been ordered, deported by the immigration judge. So he still had status at the time it was issued. And then they find this miraculously sometime in 2010 after he'd already been deported by an immigration judge. And the claim by the defense was that his mother found it in some old mail and brought it to the wife. Yeah. Right? I think that's, I think that was the story is that, you know, this card had, you know, for lack of a better word, had just been lost. And actually it's postmarked. It's in evidence. It's in an envelope postmarked. 2006. 2006 before he was deported the first time. Yes. Yes. So, I mean, I don't think the government made it. And if the government had made a mistake. That means that his wife looked at the postmark, looked at all this, and kind of concocted a story? I think so. I think that's what, you know, the jury believed. But, I mean, again, going back to your original question, it's not the government that made the original mistake. I mean, if the government had issued the card after he'd been deported, I think this is an entirely different case. Yeah, I don't think there's any evidence in this case that the government made a mistake in issuing the card. He applied for permanent residency at a time when he was entitled to it. He got it. And he thereafter committed a crime that allowed him to be deported. Yes. And so I think. Well, how long after he was deported did the card arrive? It arrived before he was deported. He was deported in, I believe, 2007. He was July of 2007. Yeah, and the postmark on the envelope indicates it was sent in 2006. And the testimony from the government witness was that it was issued in 2006 as well. So I want to go back to plein air. You really didn't answer my question. That's right. So why wasn't it plein air? Look, so is it your view that the district judge didn't impose a requirement that he testify in order to impose it? No, he did. He did. Okay. So why wasn't that plein air constitutionally? Well, I don't think he was entitled to the defense in the first place. Why? Because I don't think he had an objectively reasonable belief. The government, again, he hadn't applied for the card. So he wasn't. So look, he wasn't. This wasn't an affirmative defense, correct? Correct. All he was trying to do was negate the government's showing of intent to enter the country without permission. Correct. Is that what he was trying to do? And so the district judge initially says, I'm not going to allow this defense at all. Correct. Because it's objectively unreasonable. Yes. Nobody would have been removed this number of times. Well, and not have reapplied in the interim. Right. And wouldn't think that they had permission to enter. Yes. So I'm not going to allow this defense. Yes. Then he got nervous, right? Yes. And she kept saying that she's precluding his defense. So I mean. Right? Isn't that what happened? Yes, exactly. Okay. So then he says, so then ultimately he says, well, you know, he says, as I understand it, and maybe I don't have the record correct because there was a lot of back and forth around this, but ultimately he says, well, you can present this defense if you testify. That's correct. Right? So let's assume you're wrong and that he's entitled to present the defense. Under that assumption, why isn't it plain error? If he is entitled to present the defense, I think under. . . If he is entitled to present the defense, then I think there is error, and I think. . . Or, I mean, is there prejudice? Then the question really becomes, is there prejudice? Yes. I mean, the. . . Again, I don't think there's prejudice. The concept of the error is that he got to take the stand and tell his story. And so the question is, can the defendant be prejudiced by telling his story? And I think, again, if he was entitled to present the defense as it stood, as, you know, that, you know, he didn't have a mistake of fact, I mean, that there was an objectively or subjectively reasonable basis to believe it, I think there is error, and I think maybe there is prejudice. But I think in this case, because he was never. . . Again, I fall back to the fact that I don't think that he was allowed to have the defense in the first place. I'm just saying. So your whole argument really is that the judge's initial determination was correct. Yeah, I think that's correct. That he should have. . . She should have just held firm. I don't think the evidence here is reasonable. I think it would have been much. . . Yeah, I think. . . He either should have said, you don't get to put this defense on because there's just no factual basis. No juror is ever going to believe anything you say, and therefore I'm cutting this. . . You're not going to be able to do this. Or he should have said, all right, you put your defense on and just let the witnesses testify. I think that's correct. I mean, I think. . . If you let the witnesses testify, I have a feeling you probably. . . We wouldn't be. . . Or this argument wouldn't be here. But I want to understand what you just said. Are you conceding that if, in fact, he was entitled to put on the defense, there was plain error? If he was entitled to put on the defense, yes, I think that's. . . So if the government's position is if he was entitled to put on the defense, the judge's order was plain error?  But, again, that's. . . But I understand your. . . You should make your other argument. I just wanted to make sure. And that's just because I think without this kind of. . . without the limitation of some kind of reasonableness in terms of why he should have received this card. The United States doesn't just issue cards to people who never applied, who never asked for it. I don't want to say these people, but people who are in this kind of situation are usually not very sophisticated. Now, maybe this guy was because he had been coming in. This had happened to him before. But a lot of people just, they're not sophisticated. They just don't understand. I think it's one thing to be not sophisticated. And, you know, they're searching for, you know, for some hope. I agree, but I think to. . . They may be wrong, and they shouldn't do this. But on a very base level, I think, though, you may not be sophisticated, but there's no expectation that the government will act, will let you in without you first contacting them. I don't think we've ever seen a case where the government just issues a visa. . . You know, I used to sentence defendants on 1326 cases, and at the end you all pose all these terms and conditions of probation or of supervised release. And you'd say, okay, and after you re-enter the country within 48 hours, you've got to contact. . . You've got to contact your probation officer. You've got to contact the probation office. That's a little more sophisticated, though, I think. You know, people don't understand. What is he talking about? But I think that the concept is that you still need to present yourself. You still need to ask for permission to get in. Well, it may be a terrible defense. My guess is you could try this. . . What's frustrating about this case to me, in the small ways, if you had said, or the government had said and the judges had said, yeah, put on everything you want, you can bring in everybody in the world, the government never loses this case at trial. Here's a guy who's . . . it's his second illegal re-entry, and he has a conviction for alien smuggling. And, you know, it's not a criticism of anybody. It's just frustrating to see a case where we may have to send it back, that you know the outcome is going to be precisely the same every time it's tried. Well, do we have any cases where a judge tells a defendant, you may testify, but under certain conditions? The only one I was able to find . . . I've never heard of anything like that. The only one I was able to find was a habeas, the meniscus case, where the defendant wants to present his defense of . . . I think it's that he . . . Unreasonable fear of his father. Yeah, unreasonable fear of his father. Unreasonable fear of his father. In perfect self-defense. In perfect self-defense. And in that case, I think, you know, the judge conditioned entry of certain evidence, the expert evidence basically, upon the defendant first testifying and laying the foundation. And that's essentially what the district court was trying to do here. It didn't believe he had a subjective belief. He had a purely subjective belief. He wanted him to establish and set the foundation for it. He was talking really . . . At the beginning, he was talking about the card. He was saying, I'm not going to let this card, which on its face may say something, into evidence unless you tell me you believe the card did something. I'm looking for a foundational reason to introduce the card. And also to the admission of the wife and the son later on. I mean, it was, why should I let these people in if you don't have an objective? But if there's only a subjective belief, then you need to first testify about your own belief and that you have it. And why did you have it? And lay the foundation for that belief before anything else. So . . . So there was just one other issue. There was the 404B. The 404B evidence. And again, I think that once all of this came in, the 404B evidence is always, I mean . . . That wasn't dependent upon him testifying, 404B. That was part of the government's affirmative case, correct? It was. It was. But, I mean, I think it was made clear very early on that he was going to testify, that the only issue in the case was his knowledge, whether or not he actually believed that he had the right to enter. But even if he didn't testify, you were going to put on the 404B evidence, right? I mean, your case was put on before he took. It wasn't used during the defense case to impeach. It was put on in your affirmative case. Yeah, but I think it was made clear right during the opening that he was going to testify. And that, you know, they asked him. You know, there's this compromise back and forth, and, you know, the judge sets his conviction. You were not intending to present the 404B evidence? I don't know. Had he not testified? I don't know what the prosecutor's intention was, but I know that she knew from the opening statement that he was going to testify. And that was the only issue I had. It was stated both in closing and in opening. She could have held it all back. I guess she could have held it all back for impeachment purposes, right, and got him on the pen. Isn't it true, you know? She could have. But I think, you know, the judge verifies. And, you know, there's this back and forth about this defense can only come in if the defendant testifies. And then the defense starts talking about all of the evidence that would have been otherwise precluded. The court says, you know, are you going to set the foundation for the defense? Essentially, are you going to have the defendant testify? And she says yes. And so very early on, I think, the fact that the prosecutor knows that the defendant is going to testify, this is going to be the critical element in the entire case. Okay. So why then would the judge put on restrictions? Again, he made that decision to put on a restriction because he believed that ‑‑ I think he believed that there was no objectively reasonable basis for the defendant's belief. And so the only way ‑‑ and so there was only a subjective belief that this card was valid. And because it was ‑‑ so basically there was an omission of it was only a good faith belief that he had the right to enter the country, not the good faith reasonable belief under Smith-Baltier. So he wanted him to establish that subjective belief. The defendant established his own subjective belief that he could enter the country. Why he could enter the country, because he believed his wife had applied for him to reenter, that he honestly believed that this card was valid. In other words, what you're saying is the judge thought that he couldn't establish a reason ‑‑ he couldn't establish the reasonable subjective belief in the absence of taking the stand. Exactly. I think he needs to set the foundation first for that. The requirement being that he first reapplied, even the fact that he had to say first of all that he thought his wife had applied for him. Well, I mean, what business is it of the judge to make that decision when the defendant wants to testify? I think he wasn't trying to ‑‑ he ultimately became whether or not the defendant is testifying, but he's also trying to regulate the flow of evidence and making sure that it's relevant and not confusing and prejudicial to the jury. Well, I mean, that's a matter of discretion. It is. Yeah. So why isn't that an abuse of discretion? Because, Your Honor, I think he's correct. I mean, I think the only person that can actually establish that belief is the defendant. That foundation is the defendant himself. I mean, it's upon him to apply to reenter. Absent that, he had to have some kind of belief of why he didn't have to follow the rules, essentially, follow the law and file the I-212 or otherwise ask for permission from somebody, an immigration official, for consent to reenter the country. That's all, Your Honors. I see that I'm out of time. Well, you know, it's very rare, I think, for a defendant to succeed in a case unless the defendant testifies. Excuse me, Your Honor. I didn't quite catch that. I don't think too many defendants, unless it's one of these big cases like O.J. Simpson's, where a defendant gets acquitted and has not testified. In other words, the jury wants to, will assume that if a defendant doesn't take the stand, then the defendant's got something to hide. I don't believe that. We have limiting instructions on that. I know we have instructions on it. This is actually a helpful question to you. Judge Gregerson is asking whether the error was harmless because if all the judge did was say you had to take the stand, he would have been convicted if he didn't. I'm not sure you can answer that. No. I don't know what would have happened if he didn't take the stand. I think, obviously, I agree with that we had enough evidence presented for the jury that we met all our elements beyond a reasonable doubt. So then if he wanted to take the stand, his lawyer wanted to put him on the stand, why not let him do it? Why put conditions on it? Again, I think the judge was worried that it would confuse the jury. Well, just so we're clear, the judge didn't put conditions on him taking the stand. The judge put conditions on him. What if he testified? Yeah. Right? Yes. The judge said, and you can't present this defense unless you take the stand. Exactly. He has a choice, but yeah. And then he made some evidentiary rulings about what things he could say and not say on the stand. Those are two separate issues. Yes. But then he required he had some other conditions that he put on it. Is that right? Am I wrong about that? I don't know what other conditions you're speaking of. I mean, I think it was just that if he wanted to admit the evidence of what his wife was going to say and what his son was going to say. He had to take the stand. He had to take the stand. He had to give up. He could no longer stand on his right to remain silent. Well, he had a choice, but yeah. Right. Well, you know, he wants to put on his defense. I mean, that's the whole problem. The way this whole case has evolved is it takes much to be desired. It's a little unusual. Yes. It just should have been one way or the other. It just should have been let him testify, let him put on his case, or the judge should have stood firm, you know? And then we would have dealt with that issue on appeal and it would be a lot cleaner. I agree. Now it's kind of fuzzy. I agree. All right. Thank you. Will, we'll give you a minute. Just briefly in response to the government's contention that the foundation for the mistake of fact defense could only come through Mr. Hernandez's testimony, we would disagree with that contention. Hillman itself says that the statements of an existing mental condition are as good as the direct testimony of the defendant. Similarly, in Smith-Baltahar, the evidence proffered for the mistake of fact defense in that case were a mental health expert who would testify that Smith suffered from schizophrenia, low IQ, and then statements from his family members about the family history. So there was no defense proffer in that case that Smith would take the stand to lay the foundation for the mistake of fact and nonetheless the Ninth Circuit reversed because they found that the defense should have been admitted, even with that proffer that didn't include the defendant's testimony. So that was the only thing I wanted to clarify. Okay. All right. Thank you.
judges: Pregerson, Paez, Hurwitz